UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,   Case No.: 15-CR-20717

HONORABLE PAUL D. BORMAN

Plaintiff,

v.

ERNEST ADAM CSOLKOVITS,

Defendant.

_____/

## GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR REVOCATION OF DETENTION ORDER (Doc. #19)

The United States of America opposes defendant Ernest Adam Csolkovits's Motion for Revocation of Detention Order (Doc. #19).

On November 24th, 2015, United States Magistrate Judge David R. Grand entered an Order of Detention Pending Trial (Doc #13, EXHIBIT 1). Magistrate Grand agreed with both the United States and Pretrial Services that "no condition or combination of conditions could reasonably assure the community's safety if Csolkovits were to be released on bond."[1] Id. at 9. The government believes that defendant represents an economic danger to the community if at large, and asks that the Court reject defendant's motion to revoke Magistrate Judge Grand's order.

---

[1] The United States also argued that defendant should be detained as a flight risk. Magistrate Judge Grand ruled against the government on this argument, and the United States does not appeal.

# FACTS

## Pending Charges

Defendant was indicted on November 10, 2015 on two counts of wire fraud (18 U.S.C. § 1343) and one count of money laundering (18 U.S.C. § 1957). (Doc #1; EXHIBIT 2). The indictment alleges that defendant defrauded a victim of over one-million dollars in connection with a scheme concerning various nutritional products. Of particular relevance to detention is the timing of this scheme.

Csolkovits planned, orchestrated, and executed this fraudulent scheme between his conviction and sentencing for impeding the administration of the IRS laws in violation of 26 U.S.C. § 7212(a) and submitting false documents to the IRS in violation of 18 U.S.C. § 1001. These charges were connected to another fraud engaged in by defendant; that fraud involving a marketing scheme similar to the underlying conduct in the instant case. See United States Sentencing Memorandum and exhibits filed in 2:08-cr-20474 (EXHIBITS 3 and 4).

The original indictment in that earlier case also included charges directly related to that fraudulent marketing scheme. Id. Defendant did not plead guilty to those charges of the indictment, but did agree to pay over one-million dollars in restitution to the victims of that scheme. See EXHIBIT 3 at 9-10.

### **Defendant's History of Fraud**

Defendant's long history of fraud—dating from the late 1980's—is outlined in the sentencing memorandum submitted in his prior case. See EXHIBIT 3 at 11-16. Defendant has duped investors through marketing everything from rat poison to milk shakes. Id. He has also profited through fraudulent schemes involving food banks and self-help cassette tapes. Id.

The most concise description of defendant's behavior and character can be found in a reasoned decision of independent arbitrator Bryan H. Levy connected to a civil action; that decision was submitted as part of sentencing in the prior case. EXHIBIT 4. In ruling against Csolkovits, the arbitrator identified wrongdoing "breathtaking both in breadth and depth" and stated that a "full understanding of its nature can only be found in literature." Id. He compared Csolkovits to the villain Milo Minderbinder from Joseph Heller's Catch-22, stating that "[t]his reference is neither intended as flippancy nor disrespect toward any party. It is intended to call attention to fraud so pervasive and complete that any other reference fails to represent its evil. Respondents' actions ethically rival those of Milo in a material sense." Id. The arbitrator's conclusion began "Those Claimants who testified were duped. They never had a chance against a con which, while not at all novel, was impressively sophisticated. Csolkovits took advantage of simple people who invested money they should not have risked." Id.

3

## ARGUMENT

Defendant cannot be trusted as member of the community pending trial. His detention is necessitated by the brazen timing of the charges alleged in the indictment. In the short span between his prior guilty plea and sentencing, defendant orchestrated a scheme to defraud that netted over one-million dollars. The timing demonstrates that defendant is completely amoral and has no remorse for his prior conduct. The speed and scope shows both his skills and his dedication to fraudulent activity.

An aggravating factor is that defendant engaged in this fraud while on bond pending resolution of his prior case, and thus violated the terms of that bond. See EXHIBIT 5. He has therefore proved himself incapable of complying with prior court-imposed conditions of release, which further weighs in favor of detention.

Defendant's actions while under prior judicial supervision, combined his long history of fraud, lead to the conclusion that no condition or combination of conditions can secure the economic safety of the community should he be released pending trial.[2] Defendant has defrauded investors in a variety of schemes for over

---

[2] Phone calls made by the defendant during his prior imprisonment are also instructive. While not proffered as part of the government's initial argument at defendant's detention hearing, these calls were discussed in response to questioning by Magistrate Judge Garand on whether conditions short of detention could guarantee the safety of the community. While not essential to the government's case, the calls are, however, germane. During seventeen calls between defendant and family members between January 11th and January 27th of 2014, Csolkovits repeatedly tells his son, Arden, that he is not to conduct business in prison. Yet, under the pretext of "advising" Arden, he goes on conducts business extensively—including business connected to the instant indictment. A disc containing audio files of the relevant calls is EXHIBIT 6 to this memorandum, and will be attached to the courtesy copy of this memorandum delivered to chambers. Defendant has already been provided with the audio files of these calls.

a quarter-of-a-century. He has done so on bond. He has done so pending sentencing. He has done so from prison. Detention is the sole option to minimize the chances that he will defraud further victims pending resolution of this case.

As Magistrate Judge Garand recognized, detention as an economic danger to the community is a rarity. EXHIBIT 1 at 6. Nonetheless, consideration of economic danger to the community is appropriate in extreme cases in which a defendant's propensity to defraud is severe and pernicious. See, e.g., U.S. v. Madoff, 316 Fed. App'x 58, 59-60 (2d Cir. 2009); U.S. v. Reynolds, 956 F.2d 192, 192-93 (9th Cir. 1992); U.S. v. Possino, et al. 2013 WL 1415108 at *7 (C.D. CA April 8, 2013) ("Mendiratta argues that economic danger to the community cannot be a basis for pretrial detention under the Bail Reform Act as a matter of law. The Court rejects this argument."); U.S. v. Harris, 920 F.Supp. 132 (D. Nev. 1996); U.S. v. Rechnitzer, 2007 WL 676671 (N.D. NY Jan. 29, 1992) at n.2 ("Danger under the Bail Reform Act includes economic danger."); U.S. v. Barth, 1996 WL 684389 (D. Conn May 22, 1996). This is such an extreme case. Defendant must be detained pending trial to protect members of the community from his never-ending fraudulent scheming.

## CONCLUSION

For the reasons outlined above, the Court should deny Csolkovits's <u>Motion for Revocation of Detention Order</u>. The Government recommends that the Court also maintain the conditions imposed by the magistrate, and further add the condition that defendant should not communicate with family members concerning business of any kind.

                                            Respectfully submitted,

                                            BARBARA L. McQUADE
                                            United States Attorney

                                            */s/ TIMOTHY J. WYSE*
                                            Timothy J. Wyse
                                            Assistant U.S. Attorney
                                            (313) 226-9144
                                            211 West Fort, Suite 2001
                                            Detroit, Michigan  48226
                                            Timothy.Wyse@usdoj.gov

January 4, 2016

## CERTIFICATE OF SERVICE

I hereby certify that on **January 4, 2016**, I electronically filed the foregoing documents being the Government's Opposition to Defendant's Motion for Revocation of Detention Order (Doc. #19) with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

   Harold Z. Gurewitz   - Attorney for Defendant

s/Timothy Wyse
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI  48226
Phone:  (313) 226-09144
